Linda BELL,

v.

**UNUMPROVIDENT CORPORATION and Provident Life and Insurance Company.**

**No. CIV.A. 02–2418.**

United States District Court, E.D. Pennsylvania.

Sept. 19, 2002.

Andrew R. Spiegel, Law Offices of Andrew R. Spiegel, Philadelphia, PA, for plaintiff.

Andrew F. Susko, White and Williams, Philadelphia, PA, for defendants.

### *MEMORANDUM*

Baylson, District Judge.

The issues presented by this case are the timeliness of removal, relating to the contents of the initial pleadings filed in state court; and whether Plaintiff's claims, principally under the Pennsylvania Insurance Bad Faith Statute, are subject to preemption. Before this Court is the Motion to Dismiss by the defendants UNUM-Provident Corporation and Provident Life and Insurance Company ("Defendants") and the Motion to Remand by the plaintiff Linda Bell ("Plaintiff"). Oral argument was held on August 21, 2002. For the reasons set forth below, Defendants' Motion to Dismiss will be granted in part, and Plaintiff's Motion to Remand will be denied.

### I. *Background*

This case was started by Writ of Summons in the Court of Common Pleas of Philadelphia County, February Term, 2002, No. 1639, which was filed on February 11, 2002. The Civil Cover Sheet to the Writ of Summons indicated that the claim

was for breach of contract and that the amount in controversy was more than $50,000. No further details were provided from the initial pleadings.[1]

Defendants were served with the Writ of Summons on February 17, 2002, and filed a Praecipe demanding that Plaintiff file a Complaint. The Complaint was filed in the Court of Common Pleas of Philadelphia County on April 9, 2002, following which Defendants filed a Notice of Removal in this Court on April 25, 2002. As is obvious from the above chronology, the Notice of Removal was more than thirty days from service of the Writ of Summons, but less than thirty days from the service of the Complaint.

Plaintiff has filed a Motion to Remand the case to the Court of Common Pleas on the grounds that the removal was not within thirty days as required by 28 U.S.C. § 1446(b). Plaintiff argues that the Writ of Summons itself made clear that there was diversity of citizenship, and that Defendants knew from negotiations that had taken place between the parties, or should have known from doing their own investigation of the matter, that the "amount in controversy" was more than the federal jurisdictional requisite of $75,000.

Defendants oppose the Petition to Remand on the grounds that the "four corners" of the pleadings do not disclose that the amount in controversy is more than $75,000 and that Defendants' subjective knowledge, whether secured from negotiations with Plaintiff's counsel or its own investigation of the file, is irrelevant.

Defendants' Notice of Removal also relied on the complete preemption provided by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* under the doctrine of *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Defendants assert that they were not apprised of the appropriate allegations allowing removal until the actual Complaint was served on April 9, 2002, and that their Notice of Removal was timely because it was filed within thirty days after service of the Complaint.

II. *Analysis*

A. *Defendants' Removal*

■ The leading case in this Circuit on the issue of what constitutes notice starting the thirty-day removal period is *Foster v. Mutual Fire Marine & Inland Insurance Co.,* 986 F.2d 48 (3d Cir.1993). In this case, Judge Higginbotham reviewed contradictory district court opinions within the Circuit and rejected any concept that the knowledge of the defendants, outside the contents of the pleadings, would warrant the running of the thirty-day period. As Judge Higginbotham concluded, "the relevant test is not what the defendants purportedly knew, but what these documents said." *Foster,* 986 F.2d at 54. He also held that for something to be considered a "pleading", "it must be something of the type filed with a court." *Id.* Judge Higginbotham concluded: "We hold that § 1446(b) requires defendants to file their Notices of Removal within thirty days after receiving a writ of summons, praecipe, or complaint which in themselves provide adequate notice of federal jurisdiction as noted above." *Id.*[2]

---

**1.** Under Pennsylvania practice, an "initial pleading," as that term is used in 28 U.S.C. § 1446(b), may be the actual Writ of Summons itself, *see* Pa. R. Civ. P. 1007, but the Civil Cover Sheet, which is required under the local rules of the Court of Common Pleas of Philadelphia County, is not considered part of the initial pleading. *See* Phila. Civ. R. 205.2(A)(9)(b).

**2.** Defendants assert that the listing of the address of Plaintiff as in Philadelphia only denominates a residence, which is not necessarily the same as citizenship, which is the

Based on the above facts, this Court holds that the Notice of Removal was timely because it was not until April 9, 2002, when Plaintiff served her Complaint on Defendants, that Defendants had notice, from the pleadings themselves, that there was diversity of citizenship and the amount in controversy was in excess of $75,000, thus establishing the requisites for federal diversity of citizenship jurisdiction, 28 U.S.C. § 1332(a)(1), but also that the nature of Plaintiff's claim was under a benefit program, thus was, at least arguably, subject to ERISA preemption. *See Robinson v. Nutter*, No. C.A. 94–5578, 1995 WL 61158, at *2 (E.D.Pa. Feb.14, 1995).

### B. *Defendants' Motion to Dismiss*

Having found that Defendants timely filed their Notice of Removal, this Court must now consider Defendants' Motion to Dismiss Counts II—IV of the Complaint.

Count I charges breach of contract, and alleges that Defendants have failed to provide to Plaintiff the benefits to which Plaintiff is entitled. Defendant does not move to dismiss this Count, but to re-characterize it as a claim for denial of benefits under ERISA.[3]

Count II charges bad faith under the Pennsylvania bad faith statute, 42 Pa. Cons.Stat. Ann. § 8371 ("Section 8371"), which provides:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the in-sured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer."

Count III charges that Defendants have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 78 Pa. Cons.Stat. Ann. § 201–1, and also contains a cross reference to Defendants' alleged bad faith, specifically citing Section 8371. Count III seeks monetary damages including compensatory damages, interest, attorneys fees, and costs.

Count IV charges misrepresentation, fraud and deceit, including another cross reference to the bad faith statute, Section 8371, and seeks compensatory damages, attorneys fees, interest, costs, treble damages, damages for delay, and punitive damages.

Count V charges breach of duty of good faith and fair dealing, and although it incorporates all of the prior paragraphs, there is no specific reference to the bad faith statute.

### 1. *Supreme Court Preemption Cases*

The question presented is whether Counts II—V are preempted by ERISA. In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S.

---

jurisdictional requisite under 28 U.S.C. § 1332(a). "In order to establish jurisdiction under 28 U.S.C. § 1332, the citizenship of the parties, and not merely their residences or addresses, must be alleged." *Robinson v. Nutter*, No. C.A. 94–5578, 1995 WL 61158, at *2 (E.D.Pa. Feb.14, 1995) (citing *Krasnov v. Dinan*, 465 F.2d 1298 (3d Cir.1972)).

**3.** *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 60 n. 1, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), states that a civil action may be brought by a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." (citing § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)).

41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), decided the same day as *Metropolitan Life,* the Court held that state law suits concerning either improper processing of claims for benefits, or common-law contract and tort claims, seeking damages under a benefit plan, were preempted by ERISA:

> "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."

*Pilot Life,* 481 U.S. at 54, 107 S.Ct. 1549.

■ *Metropolitan Life* also holds that claims arising out of employee benefit plans are subject to complete federal preemption under § 514(a), 29 U.S.C. § 1144(a), which provides that the rights, regulations, and remedies afforded under the statute "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." § 514(a), 29 U.S.C. § 1144(a); *Metropolitan Life,* 481 U.S. at 62, 107 S.Ct. 1542. ERISA's broad definition of "state law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). A state law claim is completely preempted when the claim falls within the scope of ERISA's civil enforcement provision, § 502(a), § 29 U.S.C. § 1132(a); *Metropolitan Life,* 481 U.S. at 62–63, 107 S.Ct. 1542.

In *Pilot Life,* an injured employee brought a common-law bad faith claim against the insurance company that issued the ERISA disability benefit plan to the plaintiff's employer. *Pilot Life,* 481 U.S. at 43, 107 S.Ct. 1549. The Supreme Court held that the Mississippi common law of bad faith, which was applicable in both the insurance and non-insurance contexts and

allowed punitive damages, was preempted by ERISA because the remedies set forth in ERISA were intended to be exclusive. *Id.* at 57, 107 S.Ct. 1549.

Based on *Pilot Life* and other similar decisions, the opinions of this Court were fairly unanimous in holding that claims brought under Pennsylvania's bad faith statute are preempted by ERISA.

Plaintiff asserts, in opposing Defendants' Motion, that two recent decisions by the Supreme Court, in *UNUM Life Insurance Co. of America v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), and *Rush Prudential HMO, Inc. v. Moran,* —— U.S. ——, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), require a change in the preemption analysis.

There is no dispute that Plaintiff's subject disability insurance policy is an employee welfare benefit plan governed by ERISA. *See* 29 U.S.C. § 1002(1). Plaintiff's claims are claims to recover benefits due under an ERISA plan. *See* Compl. ¶¶ 13, 14, 15.

■ Plaintiff asserts that the claim under the Pennsylvania bad faith statute is not subject to preemption, but is exempted under the so-called ERISA savings clause, which exempts from preemption "any law of any state which regulates insurance". § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). In order to determine whether a state law "regulates insurance" within the meaning of the savings clause, a court must first determine whether, from a "common sense view of the matter", the state statute in question regulates insurance and secondly, must then consider the three traditional factors under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.* to determine whether the regulation fits within the "business of insurance":

1. Whether the practice has the effect of transferring or spreading a policyholder's risk;
2. Whether the practice is an integral part of the policy relationship between the insurer and the insured;
3. Whether the practice is limited to entities within the insurance industry.

*Ward,* 526 U.S. at 367, 119 S.Ct. 1380.

In the *Ward* case, and according to some commentators for the first time, the Supreme Court held that a state regulation need not satisfy all three McCarran–Ferguson factors in order to "regulate insurance" under ERISA's savings clause. *Id.* at 373, 119 S.Ct. 1380. Citing *Pilot Life,* the Supreme Court indicated that the McCarran–Ferguson factors are "considerations [to be] weighed in determining whether a state law regulates insurance," *id.* (citing *Pilot Life,* 481 U.S. at 49, 107 S.Ct. 1549), and that "[n]one of these criteria is necessarily determinative in itself[.]" *Id.*

### 2. *Cases in this District*

Three judges in this district have recently issued opinions which differ on the impact of *Ward* and *Rush* on the preemption issue. In *Rosenbaum v. UNUM Life Insurance Co.,* C.A. No. 01–6758, 2002 WL 1769899, at *1–3 (E.D.Pa. July 29, 2002), Judge Newcomer wrote that *Ward* and *Rush* had significantly changed the landscape, and a claim under Pennsylvania's bad faith statute was not preempted by ERISA because the bad faith statute was a form of insurance regulation. Citing a decision of the Pennsylvania Supreme Court in *The Birth Center, St. Paul Companies, Inc.,* 567 Pa. 386, 787 A.2d 376 (2001), Judge Newcomer held that the legislative intent behind the Pennsylvania bad faith statute was to regulate insurance. *Id.* at *2.

However, Judge Buckwalter, in *Sprecher v. Aetna U.S. Healthcare, Inc.,* C.A. No. 02–00580, 2002 WL 1917711, at *7 (E.D.Pa. Aug.19, 2002), reached an opposite conclusion and held that because the Pennsylvania bad faith statute primarily allowed tort claims for relief not provided by ERISA, such as interest and punitive damages, that it was inconsistent with ERISA and therefore preempted.

In *Kirkhuff v. Lincoln Technical Institute, Inc.,* 221 F.Supp.2d 572, 575–76 (E.D.Pa.2002), Judge Bartle arrived at the same conclusion as Judge Buckwalter, that Section 8371 did not regulate insurance within the meaning of ERISA's savings clause and that a Section 8371 claim was thus preempted. Judge Bartle noted that "even though the Pennsylvania law in issue allowing the award of punitive damages is directed solely toward the insurance industry, we agree with *Sprecher* that it conflicts with the carefully crafted and exclusive remedial scheme of ERISA and is preempted." *Id.*

In approaching this issue, which may remain a matter of difference among the judges of this Court until the Third Circuit or the United States Supreme Court rules, we must first consider, as instructed in *Ward,* the common sense view, and then the McCarran–Ferguson test. There is no dispute among Judge Newcomer, Judge Buckwalter, and Judge Bartle, that under the common sense test, Pennsylvania's bad faith statute "regulates" insurance, if only because it is applicable only to insurers in actions arising under an insurance policy and is never applied outside the insurance industry.[4]

---

4. The statute exclusively provides for damage actions. There may be some room for dispute as to whether a statute providing for damages against insurers is the same as a statute "regulating" insurance.

Turning to the McCarran–Ferguson test, and as the Supreme Court said in *Ward*, a statute need not meet each of the test's factors in order to "regulate insurance" within the meaning of ERISA's savings clause. *Ward*, 526 U.S. at 373, 119 S.Ct. 1380. Rather, the McCarran–Ferguson prongs are relevant factors to be used as "guideposts" to analyze whether the state rule regulates insurance. *Id.* at 374, 119 S.Ct. 1380.

Essentially for the reasons adopted by Judge Buckwalter in *Sprecher*, Pennsylvania's bad faith statute does not serve to spread the policyholder's risk. Rather, it provides a tort remedy for bad faith, including types of damages that are not allowed under ERISA. It is true that if an insurer is held liable, then premiums may rise, but this does not directly relate to the spreading of risk.

As to the second requirement concerning the policy relationship, Section 8371 does not alter the terms of the contract between the insurer and the insured, but only provides for a damage remedy for bad faith. The availability of punitive damages provides some incentive for insurance companies to handle insurance claims with good faith, but this does not change the policy relationship itself.

Turning to the final McCarran–Ferguson factor, the Pennsylvania bad faith statute is clearly limited to entities within the insurance industry because it is only available for claims by a policyholder against the insurance company. However, meeting only this one of the three McCarran–Ferguson prongs does not save the Pennsylvania bad faith statute from preemption.

### 3. *Ward and Rush Do Not Change the Rule in Pilot Life*

It is important to examine *Ward* and *Rush* to see how those opinions turned on the nature of the state regulations at issue in each case, which can be distinguished from the Pennsylvania bad faith statute in the instant case.

In *Ward*, the defendant insurer issued a long-term group disability policy to the plaintiff's California employer with all premiums deducted from the plaintiff's pay. *Ward*, 526 U.S. at 364–65, 119 S.Ct. 1380. The ERISA policy provided that proofs of claim be furnished to the defendant within a certain time from the onset of disability. *Id.* at 364, 119 S.Ct. 1380. The plaintiff became permanently disabled but submitted his proof of claim too late under the policy terms, and his claim was denied as untimely. *Id.* at 365, 119 S.Ct. 1380. The plaintiff brought an ERISA action to recover the disability benefits under the plan. *Id.*

The district court granted the defendant's motion for summary judgment, and the plaintiff appealed to the United States Court of Appeals for the Ninth Circuit, which held that California's notice-prejudice rule, requiring the insurer to prove that it suffered substantial prejudice from the insured's failure to give timely notice of a claim, was saved from preemption as a law that "regulates insurance." *Id.* at 366, 119 S.Ct. 1380. After finding that the California notice-prejudice rule satisfied the common sense view and the second and third prongs of the McCarran–Ferguson test, the Supreme Court affirmed the Ninth Circuit's holding that the notice-prejudice rule regulates insurance within the meaning of ERISA's savings clause. *Id.* at 374–76, 119 S.Ct. 1380.

In *Rush*, the plaintiff employee received medical coverage from her employer's ERISA welfare benefit plan issued by the defendant health maintenance organization ("HMO"). *Rush*, 122 S.Ct. at 2156. The terms of the policy dictated that the defendant would provide insureds only with services it deemed "medically necessary"

through its exercise of the "broadest possible discretion." *Id.* After the plaintiff developed chronic shoulder pain, the defendant repeatedly denied the plaintiff's requests for surgery. *Id.* The plaintiff then made a written demand for an independent medical review of her claim as provided by the Illinois HMO Act, which requires HMOs to provide a second opinion from a physician unaffiliated with the HMO on the medical necessity of a covered service proposed by the primary care physician in the event of a dispute between the primary care physician and the HMO. *Id.* at 2156–57. The defendant HMO did not provide the independent review, and the plaintiff had the surgery and submitted a reimbursement claim to the defendant. *Id.* at 2157. The plaintiff sued in state court for reimbursement, and the defendant removed to federal court arguing that the plaintiff stated a claim for ERISA benefits that was completely preempted. *Id.* at 2157–58. The district court agreed with the defendant and dismissed the plaintiff's claims. *Id.* at 2158.

On appeal, the United States Court of Appeals for the Seventh Circuit reversed the district court, holding that the Illinois HMO Act regulated insurance and was thus saved from preemption. *Id.* The Supreme Court affirmed, finding that the law satisfied the common sense test and the second and third prongs of the McCarran–Ferguson test and thus regulated insurance within the meaning of ERISA's savings clause. *Id.* at 2159–64. Additionally, the law was not preempted because it "provides no new cause of action under state law and authorizes no new form of ultimate relief." *Id.* at 2167.

The instant case may be distinguished from *Ward* and *Rush* because in each of those cases, the state regulations at issue, the California notice-prejudice rule and the Illinois HMO Act respectively, were strictly concerned with the processing of insur-

ance claims and did not provide alternative or additional remedies unauthorized by ERISA. In this case, the Pennsylvania bad faith statute specifically authorizes punitive damages and interest at three percent above the prime rate, separate remedies not authorized by Congress under ERISA. *See* 42 Pa. Cons.Stat. Ann. § 8371; § 502, 29 U.S.C. § 1132.

In *Pilot Life,* as the Supreme Court noted, the:

"complaint contained three counts: 'Tortious Breach of Contract'; 'Breach of Fiduciary Duties'; and 'Fraud in the Inducement.' ... Dedeaux [the plaintiff] sought '[d]amages for failure to provide benefits under the insurance policy in a sum to be determined at the time of trial,' '[g]eneral damages for mental and emotional distress and other incidental damages in the sum of $250,000.00,' and '[p]unitive and exemplary damages in the sum of $500,000.00.'"

*Pilot Life,* 481 U.S. at 43–44, 107 S.Ct. 1549.

The Court summarized the parties' contentions as follows:

"Although Dedeaux's complaint pleaded several state common law causes of action, before this Court Dedeaux has described only one of the three counts—called 'tortious breach of contract' in the complaint, and 'the Mississippi law of bad faith' in respondent's brief—as protected from the pre-emptive effect of § 514(a). The Mississippi law of bad faith, Dedeaux argues, is a law 'which regulates insurance,' and thus is saved from pre-emption by § 514(b)(2)(A)."

*Id.* at 48, 107 S.Ct. 1549.

After reviewing Mississippi law, the Court unanimously concluded that the state's laws, under which plaintiff was suing, did not fall within ERISA's saving clause. *Pilot Life* specifically concerned bad faith claims, but *Ward* and *Rush* did

not. Also, there is not a whisper in either *Ward* or *Rush* which purports to overrule *Pilot Life,* and which must still be considered as controlling the present dispute and requiring dismissal of Plaintiff's Counts II—IV.

Therefore, this Court's finding that Section 8371 does not regulate insurance within the meaning of ERISA's savings clause follows *Pilot Life* and does not contradict *Ward* and *Rush.*

III. *Conclusion*

Having found that Section 8371 does not "regulate insurance" within the meaning of ERISA's savings clause, Counts II, III, and IV of Plaintiff's Complaint are preempted and will be dismissed. Although Count V alleges a breach of the duty to act in good faith and does not specifically refer to Section 8371, it states a claim for ERISA benefits, and is thus preempted and dismissed. Count I will be restyled as an ERISA complaint.

An appropriate Order follows.

### ORDER

AND NOW, this 19th day of September, 2002, after considering Defendants' Motion to Dismiss, Plaintiff's Motion to Remand, Defendants' Response to Plaintiff's Motion to Remand, and the oral arguments of counsel, it is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED with prejudice as to Counts II, III, IV, and V of Plaintiff's Complaint.

Count I of Plaintiff's Complaint is restyled as an ERISA claim, and shall be answered by Defendants within ten days.

Plaintiff's Motion to Remand is DENIED.