Michael SNOOK and Cassandra Snook, H/W, Individually and as Parents and Natural Guardians of Austin Snook, a minor, Plaintiffs

v.

**PENN STATE GEISINGER HEALTH PLAN, Defendant**

No. 4:CV–00–1339.

United States District Court, M.D. Pennsylvania.

Jan. 31, 2003.

Terry W. Light, Brann & Light, P.C., Lewisburg, PA, Andrew S. Kessler, Senoff & Griffith LLP, Philadelphia, PA, David S. Senoff, Billet & Connor, Philadelphia, PA, for plaintiffs.

Steven Schildt, Post & Schell, Philadelphia, PA, Kenwyn M. Dougherty, Philadelphia, PA, Richard McMonigle, Jr., Post & Schell, P.C., Philadelphia, PA, for defendant.

### *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

The sole issue before us is whether a claim under Pennsylvania's bad-faith statute, 42 Pa.C.S.A. § 8371, is preempted by ERISA.

Plaintiffs Michael and Cassandra Snook (the Snooks) filed a three-count amended complaint against the Penn State Geisinger Health Plan (Geisinger), their ERISA-controlled employee benefit plan. The complaint focuses on a dispute over Geisinger's failure to provide coverage for their son Austin's brain surgery. Count I of the complaint alleges a cause of action under ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a). Count II is an ERISA claim for breach of fiduciary duty. *See* 29 U.S.C. § 1104(a)(1)(B). Count III sets forth a state-law claim under § 8371 for bad-faith denial of insurance benefits.

Geisinger has filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count III. Relying on *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct.

1549, 95 L.Ed.2d 39 (1987), it argues that ERISA preempts § 8371 claims. The Snooks counter by arguing that the recent case of *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), renders *Pilot Life* inapplicable and commands that ERISA's "saving clause" excepts § 8371 from preemption. We disagree with the Snooks' contentions, and we find that *Pilot Life* controls the disposition of the motion. Specifically, we find that (1) § 8371 does not come within the purview of the saving clause; and (2) Congress's intention that ERISA's civil enforcement provisions provide for exclusive remedies leads to the conclusion that § 8371, which offers remedies in addition to those provided by ERISA, is preempted. For either of these reasons, the Snooks' bad-faith claim is preempted, and Count III will be dismissed.

## DISCUSSION:

### I. 12(b)(6) STANDARD

A motion to dismiss under Rule 12(b)(6) admits the well-pleaded allegations of the complaint but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). In reviewing a motion to dismiss under 12(b)(6), the court must accept as true all factual allegations of the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey v. Wettlin Assoc., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001) (citation omitted). But "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *General Motors Corp. v. New A.C. Chevrolet*, 263 F.3d 296, 333 (3d Cir.2001) (citation and internal quotation marks omitted).

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 195–96 (3d Cir.2000) (citing *Alexander v. Whitman*, 114 F.3d 1392, 1398 (3d Cir. 1997)). "The issue [under Rule 12(b)(6) ] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.2000) (citations and internal quotation marks omitted).

### II. ANALYSIS

According to Count III of the complaint, Geisinger, the Snooks' employee benefit plan, acted in bad faith in denying coverage for Austin's brain surgery. Pennsylvania's bad-faith statute, 42 Pa.C.S. § 8371, controls this claim. It provides:

**Actions on insurance policies**

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

*Id.*

ERISA, which regulates employee benefit plans, contains an expansive preemption provision:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereaf-

ter relate to any employee benefit plan . . . .

29 U.S.C. § 1144(a). While its preemption scope is broad, ERISA contains a clause that "saves" certain laws from preemption. This provision is commonly known as the "saving clause." It exempts from preemption "any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A).

■ It is undisputed that Pennsylvania's bad-faith statute relates to employee benefit plans and thus comes within ERISA's preemption clause. The Snooks argue, however, that the statute falls under the saving clause and is thus saved from preemption.

■ In order to decide whether § 8371 falls under the saving clause, we must decide whether it "regulates insurance." The test for determining whether a law regulates insurance was introduced in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In this analysis, a court must engage in a two-step inquiry. The first task is to determine whether, from a "common sense view," the law regulates insurance. *Id.* at 724, 739, 105 S.Ct. 2380. The second task to apply three factors to determine whether the law fits within the "business of insurance." These three factors, gleaned from the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.,* are: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *Id.* at 743, 105 S.Ct. 2380. The McCarran–Ferguson factors are considerations to be weighed in determining whether the law fits within the "business of insurance," *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 49, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and neither the

presence nor the absence of a single factor is by itself necessarily determinative. *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). In order for a state law to "regulate insurance," both the common-sense prong and the McCarran–Ferguson prong must be satisfied. *Willett v. Blue Cross & Blue Shield,* 953 F.2d 1335, 1341 n. 6 (11th Cir.1992).

In *Pilot Life,* a case in which the plaintiff sought damages for improper processing of a claim for benefits, the Supreme Court considered whether the saving clause saved a Mississippi bad-faith claim from preemption. The Court noted that "a common-sense view" of the word "regulates" dictates that "[the] law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Id.* at 50, 107 S.Ct. 1549. The Court found that a common-sense analysis of the issue led to the conclusion that Mississippi's bad-faith law was not specifically directed toward the industry and thus did not regulate insurance. It explained that while the bad-faith law had traditionally been associated with the insurance industry, "the roots of this law [were] firmly planted in the general principles of Mississippi tort and contract law." *Id.*

The Court then turned to the McCarran–Ferguson factors. In examining the bad-faith law under the first factor (whether the law transfers or spreads a policyholder's risk), the Court concluded (without analysis) that Mississippi's common law of bad faith "does not effect a spreading of policyholder risk." *Id.* In approaching the second factor (whether the practice is an integral part of the policy relationship between the insurer and the insured), the Court noted that while "the state common law of bad faith may be said to concern 'the policy relationship between the

insurer and the insured,' " ... the connection to the insurer-insured relationship was "attenuated at best" because the law did not define the terms of the relationship between the parties but rather "declare[d] only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages". *Id.* at 50, 51, 107 S.Ct. 1549. As for the third factor (whether the practice is limited to entities within the insurance industry), the Court found that even if Mississippi's bad-faith law was associated with the insurance industry, it had "developed from general principles of tort and contract law available in any Mississippi breach of contract case." *Id.* at 51, 107 S.Ct. 1549. The Court's analysis led to its statement that "the Mississippi common law of bad faith at most meets one of the three [McCarran–Ferguson] factors." *Id.*

The Court also discussed the general role of the saving clause. It noted that the Mississippi cause of action sought remedies for the improper processing of a claim for benefits, which was a remedy that ERISA did not provide. After an exhaustive analysis, it concluded that the plaintiff's cause of action sought remedies that conflicted with the remedies provided by the civil enforcement provisions found in § 502(a) of ERISA, which Congress intended to be exclusive. *Id.* at 52–54, 107 S.Ct. 1549. Among the Court's statements on this issue was that "the ... civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 54, 107 S.Ct. 1549 (citation and internal quotation marks omitted).

The Court summed up its finding:

Considering the common-sense understanding of the saving clause, the McCarran–Ferguson Act factors defining the business of insurance, and, most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive, we conclude that [plaintiff's] state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved by § 514(b)(2)(A), and therefore is preempted by § 514(a).

*Id.* at 57, 107 S.Ct. 1549. The *Pilot Life* court seemed to treat the "regulates insurance" inquiry, (i.e., the common-sense and McCarran–Ferguson tests) and the "exclusivity" inquiry as alternative bases on which to find preemption.

Citing *Pilot Life*, many district courts within the Third Circuit have held that, as with the Mississippi statute in *Pilot Life*, § 8371 is preempted by ERISA. *See, e.g., Cannon v. The Vanguard Group,* No. CIV. A. 96–5495, 1998 WL 512935, at *3 (E.D.Pa. August 18, 1998); *Reilly v. Keystone Health Plan East, Inc.,* Civ. No. 98–1648, 1998 WL 422037, at *3 (E.D.Pa. July 27, 1998); *Ferry v. Mutual Life Ins. Co. of N.Y.,* 868 F.Supp. 764, 772 (W.D.Pa.1994); *Ruth v. Unum Life Ins. Co. of Am.,* Civ. No. 94–3969, 1994 WL 481246, at *3–5 (E.D.Pa. September 6, 1994); *Rallis v. Trans World Music Corp.,* Civ. No. 93–6100, 1994 WL 96264, at *4 (E.D.Pa. March 25, 1994); *Gelzinis v. John Hancock Mut. Life Ins. Co.,* Civ. No. 93–0569, 1993 WL 131566, at *4 (E.D.Pa. April 27, 1993); *Northwestern Inst. of Psychiatry v. Travelers Ins. Co.,* Civ. No. 92–1520, 1992 WL 331521, at *2–4 (E.D.Pa. Nov. 3, 1992).

According to the Snooks, however, *UNUM Life Ins. Co. of America v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) modified the analysis so that a statute such as § 8371 falls within the saving clause.

In *Ward,* the Supreme Court examined whether the saving clause exempts from preemption California's "notice-prejudice" rule, which provides that an insurer's defense based on an insured's failure to give timely notice of a claim requires an insurer to prove that it suffered substantial, actual, prejudice resulting from the delay. The Court found that the rule is preempted.

First, the Court found that as a matter of common sense, the notice-prejudice rule "regulates insurance." *Id.* at 368, 119 S.Ct. 1380. In making this finding, the Court deferred to the Ninth Circuit's conclusion that the law "is directed specifically at the insurance industry and is applicable only to insurance contracts." *Id.* The Court then analyzed the law under the McCarran–Ferguson factors, and it made clear that none of the McCarran–Ferguson criteria is by itself necessarily determinative. *Id.* at 373, 119 S.Ct. 1380. The Court declined to consider whether the first factor (transfer/spread of policyholder risk) applied. It found, however, that the notice-prejudice rule satisfied the remaining two factors; that is, it is "an integral part of the policy relationship between the insurer and the insured," and it is "limited to entities within the insurance industry." *Id.* at 374–75, 119 S.Ct. 1380. Finding that the notice-prejudice rule satisfied both the common-sense test and two of the three McCarran–Ferguson factors, the Court found that the law is saved from preemption.

The Court declined to discuss the issue of whether Congress's intent that ERISA's remedies be exclusive led to preemption of the notice-prejudice rule. *Id.* at 376–77, 119 S.Ct. 1380. According to the Court, the notice-prejudice rule simply "supplied the rule of decision" for the lawsuit and did not implicate the question of whether the civil enforcement provision provides the "sole launching ground for an ERISA enforcement action." *Id.* at 377, 119 S.Ct. 1380.

In a footnote, the Court seemed to distinguish the notice-prejudice rule from the bad-faith law discussed in *Pilot Life.* The *Pilot Life* bad-faith law, stated the Court, was "law not specifically directed to the insurance industry and therefore not saved from ERISA preemption." *Id.* at 377 n. 7, 119 S.Ct. 1380.

Relying on this statement, the Snooks contend that in *Ward,* "the United States Supreme Court would have permitted Mississippi's bad faith law to be saved from preemption ... if only the bad faith law was limited to the insurance industry." (Plaintiffs' Brief, Rec. Doc. No. 53, at 8.) They further state that in light of *Ward,* whether a bad-faith law is preempted "simply depends on whether the state law at issue is directed at the insurance industry." (*Id.* at 11.)

In support of their position, the Snooks cite a district court case from the Northern District of Alabama, *Hill v. Blue Cross Blue Shield of Alabama,* 117 F.Supp.2d 1209 (N.D.Ala.2000). According to the *Hill* court, *Ward* stands for the proposition that "if Mississippi's cause of action for bad faith breach of an obligation to pay had been allowable only as to insurance policies, the action addressed in *Pilot Life* would have been saved from ERISA preemption ...." *Id.* at 1211. Dispensing with both the "common-sense" test and the McCarran–Ferguson test, the *Hill* court stated that "the only question that remains is whether Alabama's cause of action for bad faith is limited to the insurance industry." *Id.* at 1212. The court found that it was, and thus it concluded that the bad-faith claim was saved from preemption. The Snooks urge us to adopt *Hill*'s reasoning and find that simply because § 8371 is directed solely at insurance policies, it is saved from preemption.

We disagree with *Hill*'s contention that a preemption analysis is limited to whether the law in question is limited to the insurance industry. *Pilot Life*'s suggestion that a statute that is *not* directed at the insurance industry is *not* saved from preemption does not support the conclusion that a statute that *is* directed at the insurance agency *is* necessarily saved from preemption.

We also note that in the case of *Gilbert v. Alta Health and Life Ins. Co.*, 276 F.3d 1292 (11th Cir.2001), the Eleventh Circuit abrogated Hill. Gilbert discussed ERISA-preemption of the same bad-faith law that was the subject of *Hill.* The Eleventh Circuit disagreed with *Hill* on whether Alabama's bad-faith law was insurance-exclusive, but it also offered more general criticism of *Hill.* Specifically, it chastised the *Hill* court for "its total failure to consider 'the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive.'" *Id.* at 1301 (quoting *Pilot Life*, 481 U.S. at 57, 107 S.Ct. 1549). It determined that "[u]nlike the state law rule at issue in *Ward,* the Alabama tort of bad faith at issue in Hill and at issue in this case does implicate the exclusivity of ERISA's enforcement provisions in precisely the same manner as in Pilot Life." *Id.* According to the *Gilbert* court, the Alabama tort of bad faith implicated the exclusivity of ERISA's civil enforcement provisions and thus was preempted in the same way as the *Pilot Life* statute.

While *Hill* has been largely discredited, the Snooks also cite a case from the Eastern District of Pennsylvania, *Rosenbaum v. Unum Life Ins. Co. of America*, No. CIV.A. 01–6758, 2002 WL 1769899 (E.D.Pa. July 29, 2002). *Rosenbaum* examined whether § 8371 is saved from preemption. It found that § 8371 is saved. The *Rosenbaum* court took a more conser-vative approach than that of the *Hill* court; it kept intact the common-sense and McCarran–Ferguson inquiries.

The *Rosenbaum* court found that from a common-sense standpoint, § 8371 regulates insurance. It pointed to the statute's title, "Actions on Insurance Policies," as evidence of its application to the insurance industry. It also cited a case by the Pennsylvania Supreme Court, *The Birth Center v. St. Paul Companies, Inc.*, 567 Pa. 386, 787 A.2d 376 (2001). According to the *Rosenbaum* court, the Pennsylvania Supreme Court's holding in *The Birth Center* (which, incidentally, the *Rosenbaum* court did not explicitly articulate) "emphasizes the particular focus of this statute concerning the insurance industry." *Rosenbaum,* 2002 WL 1769899 at *2.

*Rosenbaum* next analyzed § 8371 under the McCarran–Ferguson factors.

First, it stated that because § 8371 serves solely as a "special damages" section, it is "doubtful" whether § 8371 spread a policyholder's risk. *Id.*

Turning to the second factor, the court found that the bad-faith statute is an integral part of the insurer-insured relationship. It cited *Ward* and another Supreme Court case, *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), for the proposition that "a statute plays an integral part in the policy where it affords the parties rights or remedies other than those originally bargained for, in effect creating a new mandatory contract term." *Id.* While not maintaining that either *Ward* or *Rush* undermined *Pilot Life*, it explicitly distinguished § 8371 from the bad-faith statute featured in *Pilot Life.* Its primary reason for the distinction was that "[while] Pilot Life dealt with common law claims of bad faith unspecific to the insurance industry, ... the bad faith claim before this Court is

derived from a statute specific to the insurance industry." *Id.* at *3.

The third factor, according to the court, "[was] satisfied for many of the same reasons that the statute satisfies the common-sense test." *Id.*

Finding that § 8371 satisfies the common-sense test and at least two of the three McCarran–Ferguson factors, the *Rosenbaum* court determined that the statute is saved from ERISA preemption. Notably, though, *Rosenbaum* did not address the issue of the exclusivity of ERISA's civil enforcement provision.

Three post-*Rosenbaum* cases from the Eastern District of Pennsylvania disagreed with *Rosenbaum*'s (and, for that matter, *Hill*'s) conclusion. Relying on *Pilot Life*, they based their decisions at least partly on the theory that even if § 8371 satisfies both the common-sense test and each of the McCarran–Ferguson factors, it is nevertheless preempted because it interferes with ERISA's exclusive scheme of remedies. *See Sprecher v. Aetna U.S. Healthcare, Inc.*, No. CIV.A. 02–CV–00580, 2002 WL 1917711 (E.D.Pa. August 19, 2002); *Bell v. UNUMProvident Corp.*, 222 F.Supp.2d 692 (E.D.Pa.2002); *Kirkhuff v. Lincoln Technical Institute*, 221 F.Supp.2d 572 (E.D.Pa.2002).

*Sprecher* began by finding that § 8371 satisfies the common-sense test. It noted the following: "The plain language of Pennsylvania's bad faith statute suggests that the state law 'regulates insurance' because § 8371 is applicable only to insurers in actions arising under an insurance policy. In addition, this statute is never applied outside the insurance industry." *Sprecher*, 2002 WL 1917711 at *4.

Next, the court weighed the three McCarran–Ferguson factors. First, it concluded that because § 8371 is limited to special damages, it has nothing to do with

risk-spreading. *Id.* Second, it stated that the statute is not an integral part of the insurer-insured relationship. Its rationale for this conclusion was that while the bad-faith statute offers a remedy for a breach of the insurer's obligation to act in good faith, it did not actually create a new, mandatory contract term. *Id.* at *5. Third, it determined that the statute met the third McCarran–Ferguson factor, citing the reasons stated under the common-sense test. Commenting on the McCarran–Ferguson analysis, the court concluded that meeting only one prong of the McCarran–Ferguson test did not save the statute from preemption. *Id.* at *6.

The court next turned to an "alternative theory" that it believed led to the conclusion that the statute is preempted. *Id.* at *7. Citing *Pilot Life*, it stated that "it is evident that the state statute, and its provision for interest penalties and punitive damages, is more akin to an 'alternative remedy,' which is categorically preempted by ERISA." *Id.* The court pointed out that "*Pilot Life* established that it was Congress' clearly expressed intent that the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a), be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries." *Id.* (citing *Pilot Life*, 481 U.S. at 52, 107 S.Ct. 1549). It concluded that "even a state law 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme or enlarges that claim beyond the benefits available in any action brought under § 1132(a)." (citations omitted). It held that because Pennsylvania's bad-faith statute provides benefits outside the scope of ERISA, it was excepted from the saving clause:

> ERISA's civil enforcement provision also authorizes suits to seek removal of the fiduciary as well as claims for attorney's fees. In contrast, punitive

damages and interest penalties are not provided for under ERISA. Thus, Pennsylvania's bad faith statute, authorizing punitive damages and interest penalties, would significantly expand the potential scope of ultimate liability imposed upon employers by the ERISA scheme. In short, the relief ultimately available would not be what ERISA authorizes in a suit for benefits under § 1132(a). Therefore, because Pennsylvania's bad faith statute provides a form of ultimate relief in a judicial forum that adds to the judicial remedies provided by ERISA, it is incompatible with ERISA's exclusive enforcement scheme and falls within Pilot Life's categorical preemption.

*Id.* (citation omitted). *Sprecher,* then, ruled that ERISA's "limited exception to the saving clause" precluded the saving of § 8371 from preemption. *Id.* at *7.

*Kirkhuff* and *Bell* essentially agreed with *Sprecher*'s analysis; they concluded that even if § 8371 satisfies both the common-sense test and the McCarran–Ferguson inquiry, it is nevertheless preempted due to the exclusive force of ERISA's civil enforcement provisions. *Bell* in particular invoked this basis to distinguish § 8371 from the notice-prejudice rule found in *Ward,* which the Supreme Court found did not warrant a discussion of exclusivity:

> The instant case may be distinguished from Ward ... because ... the California notice-prejudice rule ... [was] strictly concerned with the processing of insurance claims and did not provide alternative or additional remedies unauthorized by ERISA. In this case, the Pennsylvania bad faith statute specifically authorizes punitive damages and interest at three percent above the prime rate, separate remedies not authorized by Congress under ERISA.

*Bell,* 222 F.Supp.2d at 699 (citations omitted).

We adopt the holdings of *Sprecher, Kirkhuff,* and *Bell,* and we decline to follow *Rosenbaum* and *Hill.* First, we refuse to accept *Hill*'s premise that a preemption analysis is limited to whether the law in question is limited to the insurance industry. There is no support in *Ward* for the abrogation of the *Pilot Life* inquiry. A *Pilot Life* analysis directs us to find that § 8371 does not regulate insurance. While § 8371 may survive the common-sense test, it does not spread an insured's risk, and because it pertains merely to an already-existing contract, it is not an integral part of the insurer-insured relationship. Without a strong McCarran–Ferguson showing, the statute cannot be found to regulate insurance. Even if it did regulate insurance, however, it would be preempted because it provides remedies, i.e., punitive damages and interest penalties, that ERISA does not. *Pilot Life* treated the "regulates insurance" inquiry, i.e., the common-sense and McCarran–Ferguson tests, and the "exclusivity" inquiry as alternative bases on which to find preemption. We will do the same. Under either theory then, ERISA preempts Pennsylvania's bad-faith statute. *Ward* is distinguishable from the instant case on the basis that while the saved statute in *Ward* did not invoke ERISA's intended exclusivity, § 8371, with its grant of alternative remedies such as punitive damages and interest penalties, is excluded from the saving clause's effect because Congress intended for ERISA to be the exclusive remedy for plaintiffs suing for employee benefits. In accordance with Pilot Life, § 8371 is preempted.

### CONCLUSION:

Because it does not regulate insurance, and alternatively because it offers remedies not contemplated by ERISA, Pennsyl-

vania's bad-faith statute is preempted. Accordingly, Count III of the complaint will be dismissed. An appropriate order follows.

### ORDER (# 1)

For the reasons stated in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. The motion (Rec.Doc. No. 49) to dismiss Count III of the amended complaint is granted.

2. Count III of the amended complaint is dismissed.

3. Defendant shall file an answer to Counts I and II of the amended complaint on or before February 18, 2003.